UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DELOIS M. TOWNSEND,

                Plaintiff,

-vs-                         **No. 1:16-cv-00406-MAT**
                                           **DECISION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

---

## I. Introduction

Represented by counsel, Delois M. Townsend ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security[1] ("Defendant" or "the Commissioner") denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## II. Procedural History

On August 27, 2012, Plaintiff, a then-fifty-two year old former nurse's aide, filed for a period of disability, DIB, and

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

SSI, alleging disability beginning March 3, 2008 due to an injury to her right arm resulting from a patient rolling onto her while she bathed him (T. 192-201, 216, 331).[2]  Plaintiff's application was denied on January 26, 2013 (T. 148-53), and she timely requested a hearing before an administrative law judge ("ALJ").  ALJ Robert T. Harvey held a hearing on May 14, 2014 (T. 43-89).  At the hearing, Plaintiff indicated that she was seeking benefits from December 1, 2011, because she had already been awarded benefits, based on a prior application, for a closed period, from March 3, 2008 to November 30, 2011 (T. 46, 102-15).  On November 4, 2014 the ALJ issued a decision in which he found that Plaintiff was not disabled as defined in the Act as of December 1, 2011 (T. 17-35).  On March 25, 2016, the Appeals Council denied review leaving the ALJ's decision as the final agency decision (T. 1-8).  This action followed.  The Court assumes the parties' familiarity with the facts of this case, which will not be repeated here.  The Court will discuss the record further below as necessary to the resolution of the parties' contentions.

### III.  The ALJ's Decision

Initially, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2016 (T. 22).  At step one of the five-step sequential evaluation, *see* 20 C.F.R.

---

[2] Citations to "T." in parentheses refer to pages in the certified copy of the administrative transcript.

§§ 404.1520 and 416.920, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2011 (T. 23). At step two, the ALJ found that Plaintiff had several severe impairments related to her right hand: de Quervain's tenosynovitis in the right thumb; right thumb carpometacarpal joint arthritis; status post right thumb trapeziectomy with interposition arthroplasty; right abductor pollicis longus tendon transfer to her right hand; light small finger Al pulley release and right thumb Al pulley release through separate incisions; and right carpal tunnel syndrome. The ALJ also found that Plaintiff had the severe impairments of right shoulder impingement syndrome; obesity; depression; and anxiety (20 C.F.R. §§ 404.1520(c) and 416.920(c)) (*Id.*). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment (T. 23-25).

Before proceeding to step four, the ALJ found that, since December 1, 2011, Plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of light work, as that term is defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) (T. 25). More specifically, the ALJ found that Plaintiff could lift and/or carry up to ten pounds frequently and up to twenty pounds on occasion with the left upper extremity, but cannot exceed ten pounds with the right upper extremity. Moreover, Plaintiff could sit for two hours in an eight-hour workday and stand and/or walk for up to six hours in an eight-hour workday. However,

3

Plaintiff could not "work near unprotected heights or around heavy, dangerous moving machinery, cannot climb ropes, ladders or scaffolds, and cannot work in areas with exposure to cold, temperature extremes or humidity" (*Id.*). Furthermore, Plaintiff had occasional limitations in the ability to (1) bend, climb, stoop, squat and kneel; (2) reach in all directions with the right upper extremity; (3) handle, finger, feel with the right hand; (4) push and pull with the upper extremities. Moreover, she has occasional limitations in the ability to deal with stress, but can perform the basic mental demands of unskilled work, including understanding, remembering, and carrying out simple instructions, and the ability to respond appropriately to supervision, coworker and usual work situations and the ability to deal with changes in a routine work setting (*Id.*). Plaintiff also has frequent limitations in repetitive use of the right hand for fine motor activity, such as when the hand joints make repeated movements within a work cycle that is repeated over and over again (e.g., assembling a circuit board or packing boxes on an assembly line). Finally, Plaintiff could never crawl (*Id.*).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work (T. 33). At step five, the ALJ found, considering Plaintiff's age, education, work experience and RFC, that jobs exist in significant numbers in the national economy that Plaintiff can perform (*Id.*). Accordingly, the ALJ found that

4

Plaintiff was not disabled from December 1, 2011 through the date of his decision (T. 35).

**IV. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**V. Discussion**

Here, Plaintiff makes the following arguments in favor of his motion for judgment on the pleadings: (1) the ALJ's physical RFC finding was not based on substantial evidence because the ALJ disregarded Plaintiff's limitations related to obesity; and (2) the ALJ's mental RFC was not based on substantial evidence because the ALJ failed to properly evaluate Plaintiff's moderate limitations in dealing with stress. For the reasons discussed below, the Court finds these arguments without merit.

5

**A. RFC**

**1. Plaintiff's Obesity and Mild to Moderate Limitations for Prolonged Walking**

Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because it disregarded the limitations on Plaintiff related to her obesity (Docket 12 at 15). Specifically, Plaintiff contends that the ALJ's RFC ignored consultative examiner Dr. Hongbiao Liu's medical source opinion demonstrating that Plaintiff had "mild to moderate" limitations for "prolonged walking" that were a direct result of her obesity (*Id.*). She does not challenge any of the limitations set forth in the physical RFC associated with Plaintiff's right upper extremity, right hand, or fine motor skills. The Commissioner argues that the ALJ explicitly considered Plaintiff's obesity by relying on opinions addressing Plaintiff's obesity that did not provide any limitations as a result of it (Docket 13 at 13-14). The Commissioner further contends that Dr. Liu assessed only mild to moderate limitations for prolonged walking, and the ALJ's RFC finding of light work is consistent with such limitations. (*Id.* at 14). Social Security Ruling 02-1p directs ALJs to consider whether a claimant's obesity significantly limits his or her ability to do work activities, including whether it makes other ailments worse. The ruling provides that obesity can cause "limitations in any of the exertional functions." SSR 02-1p(8). The ruling also provides that "[t]he combined effects of obesity with other impairments may

6

be greater than might be expected without obesity." *Id.*

Here, the ALJ's findings demonstrate that he properly considered Plaintiff's obesity in formulating Plaintiff's physical RFC. In his decision the ALJ found that Plaintiff suffered from the severe impairment of obesity. In formulating Plaintiff's physical RFC finding, the ALJ applied SSR 02-lp and considered how Plaintiff's obesity affected her overall functioning (T. 29). Specifically, the ALJ noted the repeated references in the medical record addressing the extent of Plaintiff's obesity (*Id.*). The ALJ further found that during the period of alleged disability, Plaintiff's obesity levels did not change much (T. 29 (citing T. 295-96 and 360-63)). Moreover, the medical record did not include any specific treatment or limitations related to Plaintiff's obesity (T. 29). As a result, the ALJ found that despite Plaintiff's limitations related to obesity, Plaintiff could stand or walk for up to six hours in an eight-hour work day, consistent with an RFC of light work (T. 23, 25).

Accordingly, the record reveals that the ALJ adequately considered Plaintiff's obesity and its impact on her other conditions in compliance with SSR 02-1p. *See Talavera v. Comm'r of Soc. Sec.*, 2011 WL 3472801, at \*12 (E.D.N.Y. Aug.9, 2011) (ALJ properly considered plaintiff's obesity because, inter alia, she listed "'obesity' as one of [plaintiff's] impairments, which she assumed to be severe."), *aff'd* 697 F.3d 145 (2d Cir. 2012); *Cruz v. Barnhart*, 2006 WL 1228581, at \*9 (S.D.N.Y. May 8, 2006) (no error

7

where "the ALJ made specific mention of [plaintiff's] obesity in his findings of fact").

Plaintiff also contends that the ALJ "neglected to adopt" Dr. Liu's "moderate limitations in prolonged walking" (Docket 12 at 16). Plaintiff mischaracterizes the ALJ's opinion and Dr. Liu's limitations. In January 2013, Dr. Liu examined Plaintiff and found that she had "*mild to* moderate limitations for prolonged walking" (T. 363). Dr. Liu's limitations on prolonged walking were a result of his extensive findings with respect to the impact on Plaintiff's limitations. As the ALJ correctly observed, Dr. Liu found that Plaintiff weighed 249 pounds and was five feet five inches tall, walked at a slow pace, but did not need an assistive device (T. 29, 361-62). Plaintiff was unable to walk on her heels and toes or perform a full squat due to obesity and pain (T. 29, 362). However, she needed no help changing for the examination or getting on and off the examination table (T. 29, 362). Plaintiff also had full bilateral range of motion of the hips, knees, and ankles (T. 362). Plaintiff also reported to Dr. Liu that she could cook, clean, do laundry, shop and shower (T. 361). She noted, however, that she needed help with putting on her socks and shoes (Id.). After summarizing Dr. Liu's findings and medical source opinion, the ALJ formulated Plaintiff's physical RFC of walking for up to six hours in an eight-hour workday (T. 29).

Plaintiff correctly notes that the ALJ only gave Dr. Liu's findings "some weight" and therefore "neglected to adopt" Dr. Liu's

8

moderate limitations for prolonged walking (T. 29). However, as the ALJ explained, he credited the opinion because it was based on Dr. Liu's direct observations, and only discounted the opinion for not addressing matters unrelated to Plaintiff's walking: her lifting and fine motor skills. (T. 29). Moreover, an ALJ is well within their "province in resolving the evidence to accept parts of a doctor's opinion and to reject others." *Wilburn v. Colvin*, 2016 WL 1237789, at *6 (N.D.N.Y. Feb. 29, 2016) (internal quotation marks omitted); *see Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. Jan. 28, 2013) (holding consultative examiner's opinion largely supported ALJ's RFC determination even if ALJ did not credit all of consultant's findings).

By arguing that the ALJ neglected to adopt Dr. Liu's "moderate restriction" in prolonged walking, Plaintiff attempts to overlook the "mild" language in Dr. Liu's restriction in order to portray light work as inconsistent with a moderate limitation for prolonged walking. Plaintiff cites two cases for that proposition: *Malone v. Comm'r of Soc. Sec.*, 2011 WL 817448, at *10 (N.D.N.Y. Jan.18, 2011), *adopted* 2011 WL 808378 (Mar. 2, 2011), and *Carroll v. Colvin*, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014). Neither *Malone* nor *Carroll* stand for that proposition. The issue in *Malone* was merely whether the ALJ failed to develop the record where the only direct evidence of Plaintiff's physical limitations was a "non-specific" moderate limitation with respect to standing. 2011 WL 817448, at *10. In *Carroll*, the Court explained that it was *not*

9

saying that "any moderate limitation in sitting or standing necessarily renders a claimant disabled" and cited several decisions upholding a finding of light or sedentary work where a claimant had moderate difficulties in prolonged sitting or standing. 2014 WL 2945797, at *4 (citing *Hammond v. Colvin*, 2013 WL 4542701, at *6 (N.D.N.Y. Aug.26, 2013); *Stacey v. Comm'r of Social Sec.*, 2011 WL 2357665, at *6 (N.D.N.Y. May 20, 2011)).

Indeed, a number of cases have found that an ALJ's RFC assessment of light work was supported by a medical source opinion of mild to moderate limitations for standing, among other things. *See, e.g.*, *Nelson v. Colvin*, 2014 WL 1342964, at *12 (E.D.N.Y. 2014) ("[T]he ALJ's determination that [p]laintiff could perform 'light work' is supported by [doctor's] assessment of 'mild to moderate limitation for sitting, standing, walking, bending, and lifting weight on a continued basis.'" (citing *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013)); *Hazlewood v. Comm'r of Soc. Sec.*, 2013 WL 4039419, at *7 (N.D.N.Y. 2013) (doctor's opinion that plaintiff had "mild to moderate limitations in walking, pushing and pulling" supported the "ALJ's determination that plaintiff could physically perform light work"). The Commissioner specifically cites *Nelson* in support of the ALJ's decision, but Plaintiff does not address it. In short, Plaintiff has failed to demonstrate that the ALJ failed to consider Plaintiff's obesity or Dr. Liu's limitations to prolonged walking, or that the ALJ's physical RFC finding was otherwise not based on substantial evidence.

10

### 2. Plaintiff's Moderate Limitations in Dealing with Stress

Plaintiff also argues that the ALJ failed to offer any particularized examination of Plaintiff's stress which rendered his inclusion of it in his decision "unduly vague" (Docket 12 at 18; Docket 18 at 3).

The Social Security Administration recognizes that "[s]ince mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work." SSR 85-15. Indeed, "the reaction to the demands of work (stress) is highly individualized[,]" *id.,* and "the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job." *Id.*

In formulating Plaintiff's mental RFC, the ALJ considered the opinions of state consultative examiner Renee Baskin, Ph.D., and state review psychiatrist Dr. Juan Echevarria (T. 30, 32). At the Commissioner's request, Dr. Baskin examined Plaintiff on January 15, 2013 for her complaints of depression and anxiety (T. 355-59). Dr. Baskin observed that Plaintiff was cooperative and had an adequate manner of relating, social skills and overall presentation (T. 356). Plaintiff explained that her depressive and anxiety related symptoms were secondary to coping with chronic pain, medical problems, loss of livelihood, significant limitations and financial stress (*Id.*). She also stated "I miss my mom" who had

passed away in September 2011 (*Id.*). Moreover, despite being "physically uncomfortable" and "battling a cold," Plaintiff was "pleasant, polite, personable and easily engaged" (T. 357). She had an appropriate affect and had a euthymic (normal) mood (*Id.*). Dr. Baskin estimated that Plaintiff's intellectual functioning was in the low-average range, and found her attention, concentration and memory to be mildly impaired (*Id.*). Her insight and judgment seemed "fair to good" (*Id.*). Dr. Baskin opined that Plaintiff would have moderate limitations in dealing with stress but minimal to no limitations in maintaining attention and concentration, understanding and performing simple tasks independently, making appropriate decisions, maintaining a regular schedule, learning new tasks with supervision and relating adequately with others (T. 358). On January 23, 2013, Dr. Echevarria reviewed the evidence in the record about Plaintiff's mental impairment. Dr. Echevarria assessed that Plaintiff was not significantly limited in the ability to remember locations, work-like procedures, or very short and simple instructions (T. 128). She was moderately limited in her ability to understand and remember detailed instructions. (*Id.*) She had no significant limitations in the ability to sustain an ordinary routine without special supervision, to work in coordination with or in proximity to others without being distracted by them, to make simple work-related decisions, to complete a normal workday and workweek without psychological interruption, and to perform at a consistent pace without an

12

unreasonable number and length of rest periods (T. 129). However, Dr. Echevarria did find moderate limitations in the ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (T. 129). Like Dr. Baskin, Dr. Echevarria described her as having an appropriate affect, normal mood and fair insight and judgment (T. 128-29). He also noted that Plaintiff was not significantly limited in interacting appropriately with the general public or getting along with coworkers or peers (T. 129). As a result, Dr. Echevarria concluded that Plaintiff could perform simple, low-stress work (T. 130).

However, the ALJ further supported his mental RFC by addressing Plaintiff's other psychiatric evaluations. Specifically, the ALJ found persuasive that between March 2013 and March 2014, Plaintiff saw several doctors that addressed her psychological state and none offered more than "negligible clinical findings" (T. 33). For example, Plaintiff's treating psychiatric physician, Dr. Horacio Capote, and RPA Allyson Vananececk found that Plaintiff had no more than moderate mental limitations (T. 454-95). They revealed that Plaintiff denied any suicidal plans or intent, she had no evidence of hallucinations or delusions, her concentration was either mildly or moderately impaired, her speech was clear; her thoughts were goal directed, her orientation was full, and her manner was cooperative (T. 455-56, 459-60, 463-64,

466, 470, 474, 478, 482, 486, 490). Notably, none of Plaintiff's doctors indicated that she could not handle any stress at all.

After considering the record medical evidence, the ALJ included limitations in the mental RFC formulation designed to address Plaintiff's difficulties in handling occasional work-related stress (Docket 13 at 22 (citing T. 26)). Specifically, the ALJ restricted Plaintiff to unskilled jobs that involve only (1) understanding, remembering and carrying out *simple* instructions; (2) responding appropriately to *usual* work situations, and (3) dealing with changes in a *routine* work setting (T. 25 (emphasis added)). By definition, unskilled work requires little or no judgment to do simple duties that can be learned on the job in a short period of time, and requires working primarily with objects, rather than data or people. *See* SSR 85-15.

In light of this evidence, the Court concludes that the ALJ's mental RFC is supported by substantial evidence and remand is unnecessary. *See, e.g.*, *Colon-Torres v. Colvin*, 2014 WL 296845, at * 4 (N.D.N.Y. Jan. 27, 2014) (court found that "the ALJ made clear that – although Colon- Torres's ability to respond to the demands of work restricts her to performing low-stress jobs, she retains the ability to perform the mental demands of unskilled work.").

**VI. Conclusion**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 12) is denied. The Commissioner's motion

14

for judgment on the pleadings (Docket No. 13) is granted.  The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:     November 14, 2017
           Rochester, New York.